UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PROVIDENCE AUTO BODY, INC.,
    Plaintiff,

v.

JAGUAR LAND ROVER NORTH
AMERICA,
    Defendant.

C.A. No. 1:22-0166-JJM-LDA

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Jaguar Land Rover North America ("JaguarNA") requires a repair shop to obtain its certification before it can buy Jaguar and Land Rover original manufacturer's parts. Providence Auto Body ("PAB") has not obtained the required dealership nomination required by the first step of JaguarNA's collision repair certification process. Five years have passed since PAB first requested nomination from Rhode Island's sole Jaguar and Land Rover dealership,

The first question raised by the parties' Cross-Motions for Summary Judgment (ECF Nos. 28, 29) is whether the requisite constitutional standing allows this diversity action based on state law to proceed in federal court. The Court finds that PAB lacks standing and therefore remands the case to state court.

I.     **FACTS AND BACKGROUND**

JaguarNA distributes Jaguars and Land Rovers for sale to customers through to its dealers. JaguarNA also distributes parts and accessories that can be used in

the repair of Jaguars and Land Rovers. JaguarNA has a network of authorized collision repair facilities that it certifies have met all the requirements established by JaguarNA, including customer experience, training, tooling, and facility standards. JaguarNA distributes certain parts—those related to structural repairs of collision-damaged vehicles—only to certified repair facilities.[1]

To become a JaguarNA-certified independent repair facility, a facility must first be nominated by a JaguarNA dealer. PAB is an independent repair facility that repairs several different makes and models of vehicles, including Jaguars and Land Rovers. PAB wants to be certified by JaguarNA to buy original manufacturer's structural parts to perform structural repairs on collision-damaged Jaguars and Land Rovers.

Jake Kaplan's Ltd. and Land Rover Warwick ("Jake Kaplan") are independently owned and operated authorized dealers of Jaguars and Land Rovers. In 2019, PAB's attorneys wrote to the owner of Jake Kaplan, requesting that Jake Kaplan sponsor PAB to become part of JaguarNA's authorized collision repair network. Jake Kaplan's owner testified that she was "really upset" by PAB's attorney's letter, which she found "unsettling," so she did not respond to the letter. Jake Kaplan has never refused to nominate PAB to participate in JaguarNA's authorized collision repair network. PAB did not request sponsorship from any other

---

[1] While JaguarNA recommends that customers obtain structural repairs at certified facilities, they do not require it.

Jaguar or Land Rover dealer. There is no evidence that JaguarNA interfered with the nomination process.

PAB brought state antitrust and tortious interference claims against JaguarNA in Rhode Island Superior Court seeking a declaratory judgment and injunctive relief. JaguarNA removed the case to this Court based on diversity of citizenship under 28 U.S.C. §§ 1332, 1441, and 1446. The Court dismissed PAB's tortious interference claims (Text Order dated 7/20/2022), and both parties now seek summary judgment on the remaining Rhode Island antitrust claim. ECF Nos. 28, 29.

## II. STANDARD OF REVIEW

A movant is entitled to summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party can show a genuine dispute by citing to materials in the record, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by showing that the materials cited either do not establish a genuine dispute or are not supported by admissible evidence. *Id.* An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Materiality depends on the substantive law, and only factual disputes that might affect the outcome of the suit can preclude summary judgment. *Id.* In reviewing the evidence, the Court must "draw all reasonable inferences in

favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

There are competing motions here, and so this Court reviews each motion independently and evaluate each motion "in the light most favorable to the nonmoving party." *Dahua Tech. USA Inc. v. Feng Zhang*, 988 F.3d 531, 539 (1st Cir. 2021) (citations omitted). The summary judgment standard does not change when parties cross-move; each motion is viewed "separately, through this prism." *Est. of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010); *Grossman v. Martin*, 566 F. Supp. 3d 136, 142 (D.R.I. 2021).

### III. DISCUSSION

In its two-count Amended Complaint (ECF No. 1-2), PAB alleges JaguarNA violates Rhode Island state antitrust laws (R.I. Gen. Laws §§ 6-36-4 and 6-36-5) by "only allowing one automobile repair facility to be certified."[2] PAB seeks an "order that [JaguarNA] allow [PAB] to apply for repair certification under . . . the current program." ECF No. 1-2 at 4.

JaguarNA alleges that PAB lacks standing because the "injury it suffered resulted not from [JaguarNA's] conduct and is, thus, not redressable by this Court." ECF No. 29-1 at 8. "PAB's lack of certification has nothing to do with [JaguarNA], but rather is the result of PAB's own failure to obtain nomination from a third-party

---

[2] Even though PAB alleged this in their Complaint, they have produced no evidence at the motion for summary judgment stage to support the assertion that JaguarNA allows only one facility in states to be certified.

4

dealer not before this Court." *Id.* at 17. No action or inaction by JaguarNA caused PAB injury–it was the failure to obtain nomination from Jake Kaplan. There is no evidence that JaguarNA has any role in the nomination process by their local dealers.

PAB responds by arguing that JaguarNA has misconstrued the premise of its case. It asserts that the "illegal tie is between the sale of structural parts *vis a vie* [JaguarNA's] manufacture and sale of automobiles, to its restricted repair certification program." ECF No. 32 at 4. It claims it has properly alleged JaguarNA's "role in this illegal tie, which is not negated by the dealer nomination process behind which it seeks to absolve itself of responsibility." *Id.*

### A. Burden of Proof

The burden of establishing Article III standing rests with the party invoking federal jurisdiction, although the ultimate question of whether jurisdiction exists may be raised by the Court at any point before final judgment pursuant to 28 U.S.C. § 1447(c), as "[w]e have an obligation to assure ourselves of litigants' standing under Article III," *see Frank v. Gaos*, 586 U.S. 485, 492 (2019) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006)). PAB filed its complaint in state court and JaguarNA removed it to federal court therefore JaguarNA is the party invoking federal jurisdiction, so JaguarNA bears the burden of proving standing.[3]

---

[3] Here, "a greater burden [is imposed] on defendants in the removal situation," than would be placed on plaintiffs that chose to invoke the federal court's original jurisdiction when filing their complaint because "the plaintiff is the master of the forum and is empowered to choose the court system and venue in which litigation will proceed," *see Amoche v. Guar. Tr. Life Ins.*, 556 F.3d 41, 49-50 (1st Cir. 2009) (quoting 14C Wright, Miller & Cooper, *Federal Practice and Procedure* § 3725, at 95 (3d ed. 1998)), and "placing a removing defendant in the same posture as a plaintiff who

5

### B. Standing

To establish constitutionally sufficient standing, the United States Supreme Court has set forth three areas of inquiry:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of— the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and quotation marks omitted).

#### i. Injury-in-Fact

For "injury-in-fact" there must be an "actual or imminent," rather than "conjectural or hypothetical," invasion of a legally protected interest resulting in "concrete" harm, which is "particularized," and not "generalized." *See Lujan*, 504 U.S. at 560. JaguarNA is not contesting that PAB has suffered an injury-in-fact by being unable to obtain original manufacturer's part from JaguarNA.

#### ii. Causal Connection

The second element of Article III standing—causation—requires there be a "sufficiently direct causal connection between the challenged action and the identified

---

originally files in federal court would conflict with the general rule of deference to the plaintiff's chosen forum." *Id.*

6

harm," ensuring that the connection is not "overly attenuated," and that the harm results directly from the actions, or "coercive effect," of the opposing party and not the "independent action of a third party." *See Katz v. Pershing, LLC*, 672 F.3d 64, 71-72 (1st Cir. 2012) (citing *Lujan*, 504 U.S. at 560); *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976) ("independent actions of a third party"); *Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 47 (1st Cir. 2020) ("coercive effect"); *Donahue v. City of Boston*, 304 F.3d 110, 115 (1st Cir. 2002) ("overly attenuated")).

In *Dantzler*, a class of shippers who used the services of ocean freight carriers to import goods into Puerto Rico sued the Puerto Rico Ports Authority (PRPA) and several subcontractors for economic losses because of unlawfully collected scanning fees that PRPA and its subcontractors charged ocean freight carriers, which were then allegedly passed on to shippers through operating fees. *Dantzler*, 958 F.3d at 42. The shippers in *Dantzler* did not pay any fees directly to PRPA or its subcontractors. *Id.* at 48. The Court in *Dantzler* found the shippers allegations were "nothing more than a bare hypothesis that [ocean freight carriers] possibly might push this aspect of [their] operational costs onto [Dantzler]." *Id.* (alteration in original) (quoting *Katz*, 672 F.3d at 77). The court found the plaintiffs could not prove requisite causation because PRPA did not "control[] the ocean freight carriers' relationships with their customers," and Dantzler neither plausibly alleged "ocean freight carriers were forced by PRPA" to collect fees from Dantzler, nor that PRPA had "coerced the ocean freight carriers to collect the [fees]" from Dantzler, and thus failed to establish Article III

7

standing. *Id.* at 48-49. The Court in *Dantzler* held that "causation is absent if the injury stems from the independent action of a third party, so long as the injury is not the product of that third party's coercive effect." *Dantzler*, 958 F.3d at 47 (quoting *Wine & Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 45 (1st Cir. 2005)); *Bennett v. Spear*, 520 U.S. 154, 169 (1997).

JaguarNA asserts "PAB's claimed injury is that it supposedly has not been allowed to apply to join JaguarNA's authorized collision repair network," which "has nothing to do with the challenged conduct," and thus summary judgment is "appropriate on this basis alone." ECF 29-1 at 11. JaguarNA asserts that the alleged injury to PAB stems from its "communications with Jake Kaplan's—not from any action (or omission) by JaguarNA," thus breaking the chain of causation.

The undisputed evidence shows that JaguarNA has "done nothing to *prevent* PAB from applying for certification." There is no record evidence that JaguarNA prevented PAB (or any other repair facility) from applying for certification. ECF 29-1 at 10-12.

PAB's claims result from "independent action." The Court in *Dantzler* held that "decisions by third parties breaks the chain of causation between an injury and challenged actions." And there is no evidence of any "coercive effect" by JaguarNA over Jake Kaplan, the party responsible for sponsoring PAB. Just as in *Dantzler*, the actions prohibiting PAB from being certified are by a third party—Jake Kaplan, not JaguarNA. JaguarNA has taken no action–and there is no evidence that JaguarNA

8

has coerced Jake Kaplan in any way. Thus, the Court finds that JaguarNA has failed to establish the requisite causation for the second element of Article III standing.

### iii.    Redressability

To establish redressability, a party must show that a favorable resolution of a plaintiff's claim would "likely" alleviate, but not necessarily completely remedy, the harm of the professed injury. *See Katz, LLC*, 672 F.3d at 72; *Antilles Cement Corp. v. Fortuño*, 670 F.3d 310, 318 (1st Cir. 2012) (citing *Monsanto Co. v. Geertson Seed Farms*, 560 U.S. 139, 149-54 (2010) (holding that plaintiffs had standing to challenge an injunction preventing them from planting a regulated crop, even though a decision vacating the injunction would enable plaintiffs only to petition for partial deregulation)); *see also Sprint Communications Co., LP v. APCC Servs.*, 554 U.S. 269, 286-87 (2008) (separating "causation" and "redressability"); *Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council*, 589 F.3d 458, 467-468 (1st Cir. 2009) (holding that a favorable decision would provide plaintiffs "effectual relief" by removing "a barrier to achieving approval" even though additional regulatory hurdles would need to be cleared before project could be commenced).

Here, PAB is seeking an injunction[4] allowing it to "apply for repair certification under Jaguar Land Rover's current program." ECF No. 1-2 at 3, ¶ 18. JaguarNA asserts that "[a]n injunction against JaguarNA will accomplish nothing." ECF 29-1

---

[4] In PAB's Amended Complaint it states: "Providence Auto Body, Inc. demands judgment as follows: This Court order that the Defendant shall allow Plaintiff to apply for repair certification under Jaguar Land Rover's current program." ECF No. 1-2 at 4, ¶ 21.

9

at 13, because PAB's requested relief, declaratory judgment and an injunction allowing it to apply for JaguarNA certification, "would only entitle PAB to something it is already free to do (and, indeed, has already done)," thus failing to "demonstrate that a favorable decision from this Court would redress its alleged injury." ECF 34 at 15. PAB's requested relief is not redressable in this federal lawsuit.

## IV.  CONCLUSION

PAB presents state antitrust claims. It was forced to litigate those state claims here in federal court because JaguarNA removed their state action based on diversity jurisdiction. Proving federal standing and jurisdiction are JaguarNA's burden because they removed the case, and the standard of proof is heightened because the Plaintiff is the master of their forum. Because PAB seeks relief from a third party and the Court does not find its claims redressable in federal court, the matter is REMANDED to state court because of lack of federal jurisdiction. The Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 28) without prejudice; and partially GRANTS Defendant's Motion for Summary Judgment (ECF No. 29) by remanding this case back to state court.

IT IS SO ORDERED:

John J. McConnell, Jr.
Chief Judge
United States District Court

October 16, 2024